# WAUGH *v.* WAUGH.

Where the question is what is the division line between two adjoining farms, which have been occupied in such a manner as to exclude any practical location, if the line can be located by surveys, according to the calls of the deeds, that is the true location, and can not be defeated by evidence of statements or admissions of the ancestors of the parties, when in possession of both farms, as to certain trees standing thereon being line trees.

If the starting point given by a deed can be found, and the lines accurately run and determined by the courses and distances of the deed, the boundaries must be settled by their calls, and can not be altered or affected by parol evidence.

A testator, owning two farms, adjoining each other, devised to his son J. W. one of the farms, describing it as "one hundred acres of land which formerly belonged to my brother J. W." He then gave and bequeathed to his grandson, R. W., the other farm, describing it as "the old homestead whereon I lived at the time of making my will, containing one hundred acres." *Held* that the latter words were not in any way descriptive, or intended to be, of the subject of the devise. That the descriptions of the two pieces were definite and capable of being exactly located by the deeds ; that there was no ambiguity, and therefore no necessity for, or propriety in, resorting to parol proof of the testator's intentions.

APPEAL from a judgment of the Supreme Court. The action was to recover damages for an alleged trespass by the defendant upon lands claimed by the plaintiff. The parties were owners of adjoining farms; the farm of the plaintiff lying on the west of that of the defendant, and the only controverted question was as to the true location of the division line. Both farms were originally owned by Robert Waugh, the grandfather of the parties. The farm of the defendant was conveyed to old Robert Waugh by William Scott, in 1769, and in 1807 he got title to that of the plaintiff by a deed, in which it is bounded east by the farm of the defendant. Robert Waugh, the grandfather, died in 1816, seised of the two farms in question, leaving a will, by which he devised to James Waugh, the father of the parties, the farm of the present plaintiff, describing it as "one hun-

dred acres of land which formerly belonged to my brother James Waugh." He also gave to his grandson Robert, the present defendant, the farm now owned by him, describing it as "the old homestead whereon I lived at the time of making my will, containing one hundred acres." Upon the death of Robert Waugh, the grandfather, James Waugh, the father of the parties, went into possession of both farms, and occupied them up to the time of his death, in 1856; except that during the last sixteen years the defendant has occupied the farm now belonging to the plaintiff.

James Waugh, the father, made a will devising to the plaintiff the farm now owned by him, describing it as the farm "whereon my son Robert now lives," and bounded on the east "by the farm on which I now live, and given to my son Robert after my decease."

The deed from Scott to Robert Waugh, in 1769, of the farm of the defendant, conveyed a tract of land by courses and distances, being one half of a lot of two hundred acres, known as lot No. 2, of land formerly granted to Alexander Baird and others, "beginning at the northeast corner of said lot No. 2, being a pepperage tree, marked with a blaze and two notches on four sides," &c. The deed of 1807, of the plaintiff's farm, described a farm of one hundred acres, by estimation, and bounded "on the east by the lands belonging to Robert Waugh." The plaintiff proved that the farm described in the deed from Scott, in 1769, had always been known as the "homestead," and claimed that a survey of the same, according to the description in the deed, located the division line between the two farms east of the spot on which the alleged trespass was committed; and evidence of such a survey was given on the part of the plaintiff.

On the part of the defendant it was claimed that the division line between the two farms had been practically located and established by Robert Waugh, the grandfather of the parties, while he was the owner and in possession of both farms; and there was no dispute but that if the line was as

fixed by such location, the acts complained of as a trespass were done by the defendant on his own land. To make out this defense the defendant gave evidence (the plaintiff's counsel objecting to any declarations of Robert Waugh or James Waugh) that the grandfather, Robert Waugh, resided upon the farm of the defendant, which was known as the "homestead," and that forty or fifty years ago he pointed out a hickory tree, which he said was a line tree. That after James Waugh, the father of the parties, came into the possession of the property under the will of Robert Waugh, he repeatedly declared that the hickory tree marked with three notches on two sides was on the line between the "homestead" and the west place. He also put a rock on the line to indicate its location. There was also another tree, now a stump, declared by the father and grandfather of the parties to be a line tree.

Evidence was also given, on the part of the defendant, of a survey made by a surveyor, on which it appeared that the whole tract, embracing both farms, contained $202\frac{73}{100}$ acres, and that running the line, as claimed by the defendant, gave to the plaintiff's farm a fraction over one hundred acres. The plaintiff was present at this survey and said that he would agree to run the line by the monuments, the stump and tree.

After the defendant rested, the plaintiff gave evidence of the declarations of Robert Waugh and James Waugh, to the effect that the line between the farms had never been run, and that they did not know where it ran.

The court charged the jury as follows: "The lands have been owned in such a manner as to exclude any practical location, and if the line can be located by survey, according to the calls of the deeds, that is, of course, the true location, and can not be defeated by any of the statements or admissions of the ancestors when in possession of both farms." To this charge the counsel for the defendant excepted.

The court also charged as follows : "The jury are instruct-
ed that if the starting point given by the deed can be found,
and the lines accurately run and determined by the courses
and distances of the deed, the boundaries must be settled by
their calls, and can not be altered or affected by the parol
evidence." To this charge the counsel for the defendant
excepted.

The jury found a verdict for the plaintiff, and judgment
being entered thereon, the defendant appealed to the court
at general term where it was affirmed. The defendant ap-
pealed to this court.

*J. H. Reynolds,* for the appellant.

*A. J. Parker,* for the respondent.

WRIGHT, J. The jury were instructed that the lands
embracing the farms of the plaintiff and defendant had been
owned in such a manner as to exclude any practical location ;
and if the line between the farms could be located by sur-
veys according to the calls of the deeds, that was, of course,
the true location, and could not be defeated by any of the
statements or admissions of the ancestors of the parties when
in possession of both farms. The latter proposition was
repeated in a somewhat altered form, though substantially to
the same effect, viz. that if the starting point given by the
deed could be found, and the lines accurately run and deter-
mined by the courses and distances of the deed, the boundaries
must be settled by their calls, and could not be altered or
affected by the parol evidence.

Two propositions were contained in the charge : First. That
the lands had been owned in such a way as to exclude any
practical location ; and, second, that if the line could be
located by surveys, according to the calls of the deeds, that
was the true location, and could not be defeated by parol
statements or admissions of the ancestors when in possession

N. Y. R.—28.          7

of both farms.   As abstract legal propositions, (and in this form they were given to the jury without objection by the defendant,) they seem unobjectionable.   The whole dispute was as to the true location of the line between the two farms. Both farms had been owned and occupied by the grandfather and father of the parties for more than half a century, and were used in common as one farm.   There was no adverse possession or any holding of one farm as separate and distinct from the other, or any agreement made or act done for the purpose of locating the line.   There were, it is true, some loose declarations of the grandfather and father proved to have been made on two or three occasions, that a certain tree, and the stump of a tree, and a rock, were upon the line between the farms.   There was not, and could not have been, under the circumstances, any *practical* location of the line ; and it would have been error, upon the facts conceded and proved, to have submitted any such question to the finding of the jury.   So, also, the proposition was equally correct, as matter of law, that if the line could be located by surveys according to the calls of the deeds of the two farms, the location thus ascertained would be the true one, and could not be defeated by any of the parol statements or admissions shown to have been made by Robert Waugh and James Waugh, the ancestors of the parties, when in possession of both farms.   There was no dispute about the paper title of the parties, and no doubt or difficulty about locating the line by the deeds.   It was proved, and indeed not questioned, that the farm described in the deed from Scott was always known as the "homestead," and that Robert Waugh lived and died on it.   So, also, it was proved that the farm known as the West place formerly belonged to the brother of Robert Waugh ; was conveyed to the latter by the heirs of such brother as early as 1807 ; and in such conveyance was described as bounded "east by lands belonging to said Robert Waugh," that is, the Scott premises or "homestead." Under these circumstances, the instruction was proper that

the boundary must be settled by the deeds, and that the parol evidence could not alter it.

But it is now urged by the defendant's counsel, that the case was tried and went to the jury upon an erroneous theory. The question, it is said, as to the line between the farms, and whether the defendant was a trespasser, did not depend upon the courses and distances in the old deeds or any of them; but as the grandfather, Robert Waugh, by his will in 1816, devised to the defendant, his grandson, the "*old homestead*" *whereon he then lived,* the real and sole question was where the west line was, as intended by the testator, or what part of the two hundred acres he intended to give to the defendant under the name of "*the homestead whereon he lived at the time he made his will.*"

The difficulty is, there is nothing in the terms of the devise to the defendant, or in the proof given by him, to support such a position. The words of the devise are: "I give and bequeath to my grandson, Robert Waugh, the old homestead, whereon I lived at the time of making my will, containing one hundred acres." This followed a devise to the testator's son "of one hundred acres of land which formerly belonged to my [his] brother James Waugh," which was the West place, as distinguished from the "old homestead." The devise to the grandson was the farm known and designated as the "old homestead," on which the testator is described as living at the time of making his will. The gift was of the tract of land known as the testator's "homestead," and not of a particular tract, within established boundaries, occupied by the testator at the time of making his will. In short, the words "whereon I lived at the time of making my will," is not in any way descriptive, or intended to be, of the subject of the devise. The devise to the defendant was of the "old homestead," and to the father of the plaintiff "the one hundred acres which were formerly owned by the testator's brother James." These were definite descriptions, and capa-

ble of being exactly located by the deeds. There was no ambiguity, and, therefore, no necessity for or propriety in resorting to parol proof of the testator's intentions. But construing the words of the devise as the defendant claims, there was no competent proof that Robert Waugh, the grandfather, before making his will, established any division line between the farms, without regard to the description in the deeds; or that he occupied the "homestead" at the time of the devise in reference to such designated line; or that he intended to devise to his grandson, under the name of the "old homestead," the farm on the east side of such established line, and to his son the farm on the west side. The whole evidence on the part of the defendant was, that some forty or fifty years before the trial Robert Waugh casually pointed to a hickory tree, and to the stump of another tree in a meadow where he was plowing, and said they were line trees; and even to rebut this it was shown that the grandfather occupied both farms as one up to his death, and that he repeatedly declared that the line between them had never been run, and he did not know where it ran. The evidence did not tend to show the establishment of any division line by Robert Waugh in his lifetime, or any designation of any portion of the two hundred acres as the "old homestead" expressed in the will; but if it had, there was no request whatever on the part of the defendant that any question of fact should be submitted to the jury. If it were proper that the evidence should have been submitted to the jury to determine where the testator intended the west line of the "old homestead" should be, and thus identify the farm given by the will to the defendant, the counsel of the latter should have requested its submission, and not have contented himself with excepting to legal propositions in themselves unobjectionable. It is palpable, however, that no questions of the kind could properly have been raised on the proof; and had the court submitted the question where the west line of

the "old homestead" was, as intended by the testator, it would have been error.

The judgment of the Supreme Court should be affirmed.

ROSEKRANS, J.   The sole question in the case is, whether the declarations of Robert Waugh and James Waugh were competent to control the language of the deed and wills.   No monument being mentioned in the deed from William Scott, except the pepperage tree at the northeast corner of the farm conveyed by it, and the residue of the description being by courses and distances, it is clear that the true mode of ascertaining the extent and location of the premises conveyed is to follow the courses and distances as given in the deed.   It is also clear that as the deed to Robert Waugh, from the heirs of James Waugh, described the premises conveyed as bounded on the east by lands belonging to said Robert Waugh, this line could only be ascertained by running the west line of the defendant's farm according to the Scott deed.   The land devised to the plaintiff's father being described as the farm formerly owned by James Waugh, and the land devised to the plaintiff being described as the homestead, which the proof showed was the name by which the east farm, described in the Scott deed, required the running of the division line between the two farms according to the courses and distances given in that deed.   There is no ambiguity in the language of either of the deeds or devises.   The paper title of the plaintiff to the premises where the trees were cut is thus shown to be perfect.   No authority is needed to show that the parol evidence offered was inadmissible to contradict the plain language of the deeds and devises.   The declarations of Robert Waugh the elder could not be proved to contradict the language of his will, as to the subjects of the devises to his son and grandson.   The devise to the former was of the farm formerly belonging to the testator's brother, James Waugh.   This, as the deed showed, was of land bounded on the east by lands belonging to the testator, and

the Scott deed showed the extent of his ownership. The devise to the grandson was of the homestead, and this was shown to be the premises described in the Scott deed.

The parol declarations of James Waugh, the father of the plaintiff, could not operate as a disclaimer of his title to all the land covered by the devise to him; nor could they operate to defeat his title, on the ground that they operated as a practical location of the line between the two farms. Such location can be made effectual to transfer title when the agreement for that purpose has been made between adjoining owners of land, and there has been an adverse holding in conformity with the practical location for a period of twenty years. No such adverse holding was shown, and from the nature of the occupancy of both farms down to 1841 there could be no such holding. Since that time there did not appear to have been any adverse holding in conformity with the declarations shown. If there had been, the time was too short to defeat the paper title. It follows that the proof of such declarations could not, in any aspect of the case, be admitted in evidence. The judgment should be affirmed.

All the Judges concurring,

Judgment affirmed.