(47 App. Div. 42.)

SINGER v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.  January 19, 1900.)

1. MUNICIPAL CORPORATIONS—STREETS.
    Under Laws 1874, c. 604, as amended by Laws 1876, c. 436, authorizing the park commissioners of New York City to change the width of streets, and to make and file maps thereof, which shall be "final and conclusive" on all persons, and providing for the acquisition of lands required therefor by condemnation proceedings, the mere filing of a map by such commissioners, showing their intention to take land for the purpose of widening a fenced and laid-out street, did not affect the rights of the landowner, but such owner still held title, and still had the right of occupation, as though the map had not been made.

2. BOUNDARIES—DESCRIPTION—STREET.
    Where a fenced and laid-out public street is mentioned as the boundary of land, it means the street as actually laid out and fenced, and not as it appears on a map filed by public officers, showing an intention on their part to change its width.

3. PAROL EVIDENCE.
    Where a monument is referred to in a description of land, and there is no doubt as to its location, and no ambiguity in the description, the intention of the parties cannot be shown by parol evidence, but must be determined as a legal proposition.

Ejectment by Sarah J. Singer against the mayor, aldermen, and commonalty of the city of New York and others.  A verdict was directed for the defendants, and the plaintiff moved for a new trial. Granted.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Samuel H. Ordway, for plaintiff.
Theodore Connoly, for defendants.

RUMSEY, J.  There is no dispute as to the facts.  The plaintiff was the owner of four lots of land, bounded on the east by Church street and on the south by Weber's Lane, in the city of New York. Weber's lane had been laid out by the former owner of the land on the division of the premises into lots and streets in 1847.  As laid out, it was 33 feet wide, and crossed Church street, and it had been fenced on each side and used as thus located.  In 1877 the department of parks caused to be filed in the proper office a map upon which there was indicated along Weber's lane a new street, 60 feet wide, extending 13 feet 6 inches on each side of Weber's lane.  This street was designated as a street of the third class.  It was never opened, nor were any steps taken towards laying it out on the ground, except, perhaps, the placing of a monument at the corner of the new street and Church street, and 10 feet from the corner of the lot lines, which monument, if located at all, was almost in the corner made by the intersection of the fence and Weber's lane and Church street.  That street, if named, was called "232d Street"; but no change was made in the location of Weber's lane or in its use, but it continued to be fenced and used just as it had been before the map of 1877 had been filed.  The plaintiff occupied the land up to the fence.  In 1892 a petition was filed by the

board of education for the purpose of condemning a portion of the plaintiff's land for school purposes. The description of the lands to be condemned was as follows:

"Beginning at the northwesterly corner of Church street and Weber's lane, and running thence westerly, along the northerly side of Weber's lane, one hundred and fifty feet; thence northerly, parallel with Church street, two hundred feet; thence easterly, parallel with Weber's lane, one hundred and fifty feet, to the westerly side of Church street; and thence southerly, along the westerly side of Church street, two hundred feet, to the place of beginning,— as shown on a map hereto attached, signed by Amerman and Ford, and dated the 10th day of June, 1892."

The map referred to in that description, and attached to the petition, indicated a piece of land 200 feet north and south on Church street, and 150 feet on Weber's lane; and the line on Weber's lane was indicated by a straight line which was marked, "Present Line of Weber's Lane." The condemnation proceedings were had pursuant to the petition, and the board of education, after the confirmation of the report of the commissioners, entered into possession of the premises. In taking possession of the premises thus claimed to be condemned, the board of education made the southerly line of the property to correspond with the line of the street laid out in the map of 1877, which was 13 feet 6 inches north of the fence, along the lane; and they took possession of property extending 200 feet north from that line, so that the north line of the property so taken was 13 feet 6 inches further north than it would have been had the south line been located at the fence along Weber's lane. The result was that the board of education took possession of a strip of land 13 feet 6 inches north and south, and 150 feet east and west, which is claimed by the plaintiff to be outside of the boundary of the land condemned.

The question presented is, what was the southern boundary of the land described in the condemnation proceedings? Was it the fence then standing on the north side of Weber's lane, or was it an imaginary line 13 feet 6 inches north of that fence, and within the land owned by the plaintiff? The usual and ordinary rule in such cases is that, when the description of lands in the conveyance refers to any artificial monument as the boundary, such monument is controlling. Van Wyck v. Wright, 18 Wend. 157; Wendell v. People, 8 Wend. 183. In the application of that rule, it has been held that, where a highway is mentioned as a boundary of land, it means the highway as it exists and is open, and not the highway as it may be laid out on a map. Blackman v. Riley, 138 N. Y. 318, 34 N. E. 214; Power Co. v. Tibbetts, 31 Conn. 165; O'Brien v. King, 49 N. J. Law, 79, 7 Atl. 34. If this well-settled rule is to be applied in this case, there can be no doubt that the land described in the petition of the board of education, and taken in the condemnation proceedings, had for its southern boundary the fence as it then existed on the north side of Weber's lane. But it is claimed by the defendant that this rule should not be applied in this case, because the street had before that time been actually laid out by the department of parks in such a way that it had become a street 60 feet wide, the

north line of which was 13 feet 6 inches north of the fence. That such a map had been filed is conceded in the case, and that the map, so far as the city authorities were concerned, was final and conclusive as to the street thus indicated, is established by the statute; but the street thus indicated was not Weber's lane, but it was an unnamed street, and, when it was named, it was named "232d Street"; and the boundaries of Weber's lane, as such, were never changed by this map, and they continued as they had been originally fenced so long as that lane was there, and at least until after the land had been taken by the board of education. The laying out of this street had no effect upon the rights of the plaintiff to the land which happened to be included within it. She still held the title, and she still had the right of occupation for any purpose for which she might lawfully use it, precisely to the same extent as though the map had never been made. Wagner v. Perry, 47 Hun, 516. Indeed, the filing of the map upon which the proposed street was indicated was not even an incumbrance upon her title. Forster v. Scott, 136 N. Y. 577, 32 N. E. 976, 18 L. R. A. 543. The street being indicated on the map as a street of the third class, it could not be opened, except upon petition of the owners of three-fourths of the linear frontage along its course. Laws 1876, c. 436. It could not be said, from the mere fact that the map had been filed, that the street was certain to be opened; and the filing of the map did not have the effect of laying out the street, but was only an indication of the plans for future improvements, and to show how the street would probably be laid out if it ever was opened. In re Rhinelander, 68 N. Y. 105–107. There can be no doubt, therefore, upon the undisputed facts, that the southern boundary of this land which was fixed by the description at the north side of the present line of Weber's lane must be deemed to have extended to the lane as it was then fenced and occupied.

But it is claimed by the defendant that the courts have already held that, where a street is indicated as the boundary line of a piece of land, it must be taken to be the street as laid out on the map; and In re Fourth Ave., 11 Abb. Prac. 189, is cited as sustaining that proposition. In that case the lands in question were situated above 99th street, in the city of New York, and were bounded on one side by 4th avenue, which had not then been opened. As originally established by law, 4th avenue was 100 feet wide; but, long before the conveyance in question was made, the width had been increased to 140 feet. The court was called upon to decide whether the original line of 4th avenue, or its line as subsequently widened, should be taken as the boundary mentioned in the conveyance. In view of the fact that the street had never been laid out, except on a map, and that the only lines established for it were those established by law, the court held that the lines so established must be assumed to be the lines intended. But that case differs from this, because here the street referred to had been laid out and fenced, and there was no other line for the particular street, except the one along which the fence was built. The situation in this case was the same as in the case of Blackman v. Riley, cited above, where the court

held that the street as actually laid out was the boundary, and not the street as it might have been had the statute been complied with.

Evidence was given by both parties as to what was sworn to before the commissioners in the condemnation proceedings, from which it was claimed that a question of fact arose as to the intention of the board of education of fixing the southern boundary of this land on the "south line of Weber's lane." If that evidence had been relevant, the sole effect of it would have been to create a question for the jury. But the evidence was not material. Where, as in this case, a monument is referred to, and as to the location of which there can be no doubt, and there is no ambiguity in the description, the intention of the persons adopting the monument is to be determined as a legal proposition, and parol evidence is not competent to show what that intention was. Waugh v. Waugh, 24 N. Y. 94; Clark v. Baird, 9 N. Y. 183. The question is not what the witnesses understood, but what were the facts; and, the facts being established, then the law determines the intention of the parties, as a necessary inference from the words which they have used.

Instead of the verdict having been ordered for the defendant in this case, upon the facts as they were made to appear, and which were undisputed, the verdict should have been ordered for the plaintiff. The motion for a new trial must therefore be granted, with costs to the plaintiff to abide the action. All concur.