(80 Misc. Rep. 269.)

### WEINHEIMER v. ROSS et al.

(Supreme Court, Special Term, Erie County. March, 1913.)

1. BOUNDARIES (§ 3*)—VENDOR AND PURCHASER (§ 113*)—MAP AND ACTUAL LOCATION OF STREET—INTENT OF PARTIES—RESCISSION.

Where the actual location of a street differed 3½ feet from the map location, and the street was named as a boundary in a contract for the sale of land, reference being made also to the map, it will be held that the parties intended to locate with reference to the actual location of the street; and the purchaser cannot rescind on the ground that the title was not marketable, because 3½ feet of the land was within the street as actually laid out.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3;* Vendor and Purchaser, Cent. Dig. § 201; Dec. Dig. § 113.*]

2. APPEAL AND ERROR (§ 1212*)—EFFECT OF DECISION—NEW TRIAL—DECIDED ISSUES.

Where the Court of Appeals reversed a decision on one ground, but to have been consistent must have decided another litigated issue, such issue is not open to argument on a new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4713; Dec. Dig. § 1212.*]

3. DEEDS (§ 114*)—CONSTRUCTION—DESCRIPTION—INTENTION.

Where a description by metes and bounds does not cover a strip in question, but it appears from words following such description that the whole strip was intended to be conveyed, the intended conveyance will prevail.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 316–322, 326–329, 388; Dec. Dig. § 114.*]

Action by John F. Weinheimer against Alexander J. Ross and another. Decree for defendants.

See, also, 140 App. Div. 919, 125 N. Y. Supp. 1149.

Martin & Geyer, of Buffalo, for plaintiff.

Julius A. Schreiber and Edward R. O'Malley, both of Buffalo, for defendants.

WHEELER, J. On May 1, 1893, the Park View Land Company, a corporation, made and entered into a contract with the plaintiff, wherein and whereby said company agreed to sell and convey to the plaintiff that certain piece or parcel of land situate, lying, and being in the city of Buffalo, county of Erie, and state of New York, and de-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

scribed as follows: Being part of lot No. 72 in the eleventh township and eighth range of townships, and being subdivision lots Nos. 1, 2, 3, 4, and 5 in block C on a subdivision map of said lot 72 made by M. Davey, surveyor, and filed in Erie county clerk's office under cover 399; said lots being 157 feet front on the west side of Englewood avenue, and being 115 feet deep on the south side of Nicholson avenue, said subdivision lots 1, 2, and 3 being each 31 feet front, and rear, and said subdivision lots 4 and 5 being each 32 feet front and rear on the southwesterly line of said Englewood avenue by 115 feet in depth on a line parallel with the southeasterly line of said Nicholson avenue.

In and by the terms of said contract the plaintiff agreed to pay therefor $2,826 in monthly installments of $25 each, with interest from May 1, 1893. Said purchase price to be paid in nine years from the date thereof, or on May 1, 1902. In the year 1897 said contract was assigned and transferred to the defendants, who agreed to carry out the covenants of said company and assume its obligations under said contract. That prior to January 6, 1908, plaintiff notified defendants that, unless they procured an additional deed from the Kenmore Electric Land Company and a release from Elijah Cook, containing a description of lots 1, 2, 3, block C, he would refuse to perform the contract. That thereafter and on January 6, 1908, plaintiff notified defendants that the contract was abrogated, canceled, and annulled. Thereupon the plaintiff began this action to recover back from the defendants the amounts paid by them on the purchase price, alleging that the defendants' title to the premises was defective, and that they refused to obtain and procure the necessary deeds to perfect their title.

The defendants, by answer, denied their title was defective and that they were unable to convey a good title, and alleged they were ready and willing to convey and perform the contract in question, and praying a specific performance by the plaintiff of the same.

The case was tried before the late Mr. Justice White at an Equity Term of this court, and the learned justice directed judgment in favor of the plaintiff. An appeal was taken from that judgment to the Appellate Division of this court for the Fourth Department. The judgment was there affirmed, but upon a further appeal to the Court of Appeals the judgments below were reversed and a new trial ordered. The opinion of the court on its decision awarding a new trial is reported in Weinheimer v. Ross, 205 N. Y. 518, 99 N. E. 145.

Such additional facts as are pertinent to the case will be recited later in this opinion.

One of the differences between the parties to this litigation relates to the validity of the title of the defendants to premises contracted to be conveyed to the plaintiff. The defendants' assignor contracted to sell and convey "subdivision lots Nos. 1, 2, 3, 4, and 5 in block C on a subdivision map of said lot 72 made by M. Davey, surveyor, and filed in Erie county clerk's office under cover 399, to which reference is hereby made for greater certainty. Said lot being 157 feet front on the west side of Englewood avenue, and being 115

feet deep." According to the map to which reference is made, these lots begin at the southwest corner of Englewood avenue and Nicholson avenue and extend southerly from that point 157 feet along Englewood avenue.

Nicholson avenue remained, for a time, only a paper street. It was, however, subsequently actually laid out and opened on the ground by staking its side lines and working the street itself. In thus opening the actual street it appears that the southerly line of Nicholson avenue was established $3\frac{1}{2}$ feet to the south of the line as laid down on Davey's map, and if Davey's map and distances are to control $3\frac{1}{2}$ feet of subdivision lot No. 1 lie within the boundaries of Nicholson avenue. Nicholson avenue, however, was actually laid out and worked as it exists on the ground prior to the making of the contract in question, and the defendants contend that the actual location is to control, rather than the map location.

[1] The general rule is that, where a map location of a street differs from the actual location, the actual location will govern, where the deed is executed after the practical location has been made, and it appears that it was the intention of the parties to locate with reference thereto. Smith v. Stacey, 68 App. Div. 521, 73 N. Y. Supp. 1022; Burke v. Henderson, 54 App. Div. 157, 66 N. Y. Supp. 468; Norton v. Hughes, 17 Abb. N. C. 287; Singer v. Mayor, etc., 47 App. Div. 42, 62 N. Y. Supp. 347; Herse v. Mazza, 100 App. Div. 62, 91 N. Y. Supp. 778; Barrows v. Webster, 144 N. Y. 422, 39 N. E. 357; Van Wyck v. Wright, 18 Wend. (N. Y.) 157.

The initial inquiry is, What was the intention of the parties to the contract of sale? Nicholson avenue had been located and publicly opened at the time the contract was entered into. The map to which reference was made showed the lots sold located on the corner of Nicholson and Englewood avenues. It does not appear from the evidence that the contracting parties, or either of the defendants, knew that the actual location of the south line of Nicholson avenue differed $3\frac{1}{2}$ feet from the line as laid down on the Davey map. On the contrary, so far as Ross and Voisenet are concerned, it appears that they supposed the lines of Nicholson avenue as actually laid out on the ground corresponded with the lines as designated on the Davey map; for they contracted to sell other lots fronting on Nicholson avenue, making reference in each case to the Davey map. It is impossible to suppose that when the plaintiff agreed to purchase the lots in question he intended to buy a lot $3\frac{1}{2}$ feet of which lay within the bounds of Nicholson avenue. The irresistible inference is that his intention was to purchase lots abutting on the street line as actually established by the practical location of the street. So far as the question of intention is concerned, it must be resolved in the defendants' favor that the intention of the parties to the contract was to sell and convey lots 1, 2, 3, 4, and 5 in accordance with the actual location of Nicholson avenue—that is, with the north line of lot 1 corresponding with the south line of Nicholson avenue as it now has been established on the ground—and that the deed of con-

veyance tendered was sufficient in form to describe the property so intended to be sold and purchased.

The Court of Appeals must have so held in the decision given by it on the appeal of the defendants in this very case from the judgment rendered on the former trial. On the former trial the same question was raised as to the ability of the defendants to give title to the property described in the contract by reason of this variance of 3½ feet between the Davey map and the actual location of Nicholson avenue. The trial court held that the plaintiff was entitled to recover solely for the reason that, although the defendants' title was good, there was a mortgage lien upon the property originally amounting to upwards of $10,000, on which there remained unpaid $1, or thereabouts, and that a tender of a release from said mortgage at the time of the trial was unavailing to entitle the defendants to a specific performance of the contract. The Court of Appeals held this error, and ordered a new trial. If the plaintiff's contention that by reason of the discrepancy between the map and the actual location of Nicholson avenue they were entitled to rescind the contract and recover back the money paid on the contract was good, then it is manifest the judgment appealed from should have been affirmed, notwithstanding the trial court may have erred in holding the release ineffective for the purpose.

[2] The question as to the alleged defect of title by reason of the discrepancies between the map and actual street location was fully argued and presented by counsel on the argument of the appeal in the Court of Appeals, and we must conclude that that court held with the defendants that their title was good notwithstanding, and that the actual location controlled; for otherwise the plaintiff was entitled to recover, and an affirmance of the judgment would have followed.

Following the well-recognized principles of construction and what must have been the views of the Court of Appeals in this very case, we are forced to dismiss this objection to the defendants' title.

[3] The plaintiff also claims that defendants' title to a strip some 14 feet in width running diagonally across the lots in question is bad, and that for that reason they were entitled to refuse to perform their agreement to purchase. The defendants' title to this strip was derived through a deed from the Kenmore Electric Land Company, in which a triangular piece of land is described. The parcel is described by metes and bounds, and the distances given are insufficient to indicate the strip in question. After the description, however, is added the following words, to wit:

"It is intended to convey hereby all of the triangular piece of land belonging to the first party and bounded on the northeasterly by the southwesterly line of Englewood avenue, on the northwesterly by the southeasterly line of Nicholson avenue, and on the south by the southerly line of the land of the said party of the first part in accordance with the location of said Nicholson avenue and Englewood avenue as established by said map made for the Kenmore Electric Land Company by C. F. Witmer, surveyor," etc.

The intention of the parties is to prevail; and there can be no doubt that this clause operated to describe the whole triangle, in-

cluding the 14-foot strip, and that mere distances erroneously stated must give way to the declared intent of the parties.

What has been previously said as to the effect of the decision of the Court of Appeals applies with equal force to the contention now made, and the subject of discussion.

Another point of difference between the parties to this litigation was the existence of a mortgage lien on the premises, covering it and other tracts, originally amounting to upwards of $10,000, on which there remained unpaid about $81. The defendants had obtained and recorded, pending the former trial of this action, a release of this mortgage. The trial court, however, deemed this release unavailable to the defendants, and rendered judgment for the plaintiff accordingly. The Court of Appeals held this error, and held that, nowithstanding this action was one at law, the defendants could interpose an equitable counterclaim for specific performance, and if it appeared that the position of the parties had not changed so as to make it inequitable the defendants could invoke in their behalf the operation of the general rule in equity that it is a sufficient answer to the claim for rescission that the party is able to make his title good before decree. Weinheimer v. Ross, 205 N. Y. 518, 99 N. E. 145, citing Schiffer v. Dietz, 83 N. Y. 300, 312.

I am unable to discover, in the record made before me, any fact or circumstance which renders it inequitable, owing to any changed conditions of the parties, to enforce specific performance. I am of the opinion, therefore, that the defendants should prevail, the complaint be dismissed, and a specific performance decreed. Owing, however, to the circumstances of the case, this disposition is made without costs to either party.

Let a decision be prepared accordingly.