JOHN E. BLACKMAN, Appellant, *v.* CHARLES RILEY,
Respondent.

A deed executed in 1809 of certain lands in the city of New York,
described them as in two parcels, the one lying on the east and the
other on the west of the Bloomingdale road. The parcel on the east was
described as beginning "at a point on the east side" of said road, and
thence running certain courses and distances until the line is brought
to the place of beginning. *Held,* that the deed did not convey any
portion of the land forming the bed of said road.

The strip of land occupied by and used as said road in 1809, was two rods
wide. In an action of ejectment to recover lands lying easterly of said
strip, plaintiff claimed title as owner of land formerly part of said road.
It appeared that if the road at the time of such conveyance was but two
rods wide, it did not include the premises in question, but would include
them if said road was four rods wide. *Held,* that in the absence of
words in the deed indicating the contrary, the description should be
construed as referring to the actual road as worked and used, not to an
abstract legal line, invisible, unused and practically unknown; and so,
that the deed included and conveyed the said premises.

The road was laid out or re-established under and by act of the colonial
legislature of 1703, which provided for laying it out four rods wide.
No provision was made for payment to the owners for the land taken,
nor was there any provision for a compulsory taking. By act of 1751
(Chap. 910, Laws of N. Y. 1691–1773), after recitals showing the hard-
ship of keeping the road open the width of four rods, it was provided
that a surveyor should be appointed to survey said road, "and lay out
the same of the breadth of two rods as the same now runs." *Held,*
that the act was not merely permissive, but mandatory; that it was to
be presumed that the surveyor performed his duty; and that the laying
out of the road under the act operated as an abandonment of the user of
the two rods not included in such laying out, and as reducing the road
to two rods in width, and thereupon the right to occupy the land
reverted to the abutting owners.

It appeared by a map made by the city surveyor in 1782 of lands through
which said road run, lying south of those conveyed by said deed of 1809,
that the road was but two rods in width. *Held,* that the map, although
made for private parties, and so not conclusive against plaintiff, yet was
evidence of the fact that the road was laid down on the map by the
official city surveyor as but two rods wide, and was so considered by
him.

It appeared by official maps made in 1820, that the road was laid down
thereon of the width of four rods; a resolution of the common council,
passed in 1793, provided for the opening of said road to "its proper and

legal width of four rods." In 1799 a resolution was passed appointing a committee to see that the abutting owners moved their fences back. The resolution recited that such action was taken upon petition for the opening of the road "to its proper width of four rods." An act of 1787 gave the city the right to widen roads to the width of four rods. No proceedings were shown to have been taken under said act to widen the road in question. *Held,* that as presumably the road was laid out of the width of two rods under the act of 1751, the burden was upon plaintiff to show some change, so that in 1809 it was four rods wide; that this was not shown by the evidence.

The presumption that a public officer, upon whom an official duty has been imposed by statute, has performed that duty, does not authorize a presumption that a committee appointed by the common council of a city to see that private persons perform some act, attended to the business so intrusted to it, and that the private persons performed the act.

Reported below, 63 Hun, 521.

(Argued March 21, 1893; decided June 6, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 31, 1892, which affirmed a judgment in favor of defendant entered upon the report of a referee.

This was an action of ejectment.

The facts, so far as material, are stated in the opinion.

*George Hoadly* for appellant. The deed of Cornelius Cosine (the elder) to his sons, Balm Johnson Cosine and Cornelius Cosine (the younger), was executed and recorded in accordance with law, and vested title to the premises in controversy in the grantees, of which the certified copy of the recorded deed offered in evidence was conclusive proof. (3 R. S. [1st ed.] 3, 5; Code Civ. Pro. § 933; *In re Van Wimple,* 10 N. Y. 422; *U. S.* v. *Arredondo,* 6 Pet. 691; *Jackson* v. *Gilchrist,* 15 Johns. 109; *Hunt* v. *Johnson,* 19 N. Y. 292, 293; *Van Cortlandt* v. *Tozer,* 17 Wend. 340; *Knox* v. *Silloway,* 10 Maine, 219; *Eaton* v. *Campbell,* 7 Pick. 10.) Balm Johnson Cosine and Cornelius Cosine, Jr., grantees in the deed of 1759, and their heirs and devisees, took and held possession thereunder until 1809. (1 Greenl. on Ev. §§ 141–143; Taylor on Ev. [8th ed.]

580–587; 2 Best on Ev. 900–901; *Smith* v. *Lorillard*, 10 Johns. 338; *Carleton* v. *Darcy*, 90 N. Y. 566; *Hunter* v. *Starin*, 26 Hun, 529.) The will of Cornelius Cosine, Sr., was not operative or effectual to convey the Bloomingdale farm to defendant's grantors. (2 Jarman on Wills, 153; 1 Powell on Devises, 147–148; *Bunter* v. *Coke*, 1 Salk. 237; *Goodright* v. *Forester*, 8 East, 552; *Atty.-Gen.* v. *Vigor*, 8 Ves. 282.) The decree in the case of *Harsen* v. *Cosine* did not affect the title to the Bloomingdale farm. (*Webb* v. *Buckelew*, 82 N. Y. 555; *Stannard* v. *Hubbell*, 123 id. 520; *Springer* v. *Bien*, 128 id. 102; *Shaw* v. *Broadbent*, 129 id. 123.) The decree in *Harsen* v. *Cosine* was abandoned by all the parties to it on February 9, 1809, and a voluntary division was made, which did not recognize, or conform to, the will of Cornelius Cosine, the elder, or to the decree in *Harsen* v. *Cosine*. (*Meriam* v. *Harsen*, 2 Barb. Ch. 232; *Vosburgh* v. *Teater*, 38 N. Y. 561; *Graham* v. *Mayer*, 99 id. 611; *Parr* v. *Vil. of Greenbush*, 112 id. 246.) The release to Jacob Harsen did not, nor did any of the other releases, convey the title to the Bloomingdale road. (*Jackson* v. *Hathaway*, 15 Johns. 447; *Fearing* v. *Irwin*, 4 Daly, 385; 55 N. Y. 486; *English* v. *Brennan*, 60 id. 609; *White's Bank* v. *Nichols*, 64 id. 65; *Ins. Co.* v. *Stevens*, 87 id. 287; *Forbes* v. *R. Co.*, 121 id. 505; *Tag* v. *Keteltas*, 16 J. & S. 241; *Post* v. *Hazlett*, 36 N. Y. S. R. 219; *Lee* v. *Lee*, 27 Hun, 1.) Bloomingdale road was an ancient road, not a street of the city of New York. (*Whitbeck* v. *Cook*, 15 Johns. 483, 490; *Hymers* v. *Esty*, 36 Hun, 147; *Jackson* v. *Hathaway*, 15 Johns. 453; *In re Barclay*, 91 N. Y. 439.) The Bloomingdale road was never less than four rods wide, legally or actually. (*In re Fourth Ave.*, 11 Abb. Pr. 189; *Fox* v. *Hart*, 11 Ohio, 414; *Lane* v. *Kennedy*, 13 Ohio St. 42; *McClelland* v. *Miller*, 28 id. 488, 502; *Railroad* v. *Comrs.*, 31 id. 349; Wood on Lim. §§ 53, 268.) Upon the discontinuance of the public use of the Bloomingdale road, the title reverted to the original owner. (*Kane* v. *M. E. R. Co.*, 125 N. Y. 164; *Story* v. *N. Y. E. R. R. Co.*, 90 id. 172; *In re John St.*, 19 Wend. 659.) The plaintiff is entitled to

recover even if the public use of the highway has not been legally discontinued. (*Cortelyou* v. *Van Brundt*, 2 Johns. 357, 363; *Jackson* v. *Hathaway*, 15 id. 447; *Whitbeck* v. *Cook*, Id. 491.) The Bloomingdale road was not discontinued or changed in legal character by the act of May 5, 1847, chap. 203. (*Forster* v. *Scott*, 49 N. Y. S. R. 699; *Post* v. *Hazlett*, 36 id. 219; Const. N. Y., art. 3, § 16; *Spears* v. *Mayor, etc.*, 87 N. Y. 368.) The proceedings taken under the act of 1869 discontinued the public use without vesting title in the defendant's grantor or divesting defendant's title to the strip in controversy. (*Spears* v. *Mayor, etc.*, 87 N. Y. 368; *Voorhees* v. *U. S. Bank*, 10 Pet. 449; *Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 122; *King* v. *Mayor, etc.*, 102 id. 171.) The deeds to plaintiff are not void for champerty. (*Crary* v. *Goodman*, 22 N. Y. 147; *Danziger* v. *Boyd*, 120 id. 638; *Dawley* v. *Brown*, 79 id. 390; *C. L. N. Co.* v. *K. N. Co.*, 37 Hun, 9; *Sands* v. *Hughes*, 53 N. Y. 295; *Pearce* v. *Moore*, 114 id. 259; *People* v. *Marx*, 99 id. 377; *Forster* v. *Scott*, 49 N. Y. S. R. 699; *Kuhn* v. *Common Council*, 70 Mich. 534; *Brown* v. *Bigne*, 21 Ore. 260; *Wynehamer* v. *People*, 13 N. Y. 378.)

*Henry H. Anderson* for respondent. The court at General Term properly sustained the ruling of the referee in excluding the record of the alleged Cosine deed of 1759, offered in evidence by the plaintiff. (*Blackman* v. *Riley*, 18 N. Y. Supp. 476; *Fox* v. *Reil*, 3 Johns. 477; *Henry* v. *Bishop*, 2 Wend. 576; *Shaver* v. *Ehle*, 16 Johns. 202.) Even if the record of the Cosine deed of 1759 had, as a record, been held admissible in evidence, it should be excluded from consideration because it had been set aside by the chancellor, in 1808, and the decree of the chancellor had been ratified by the compromise of 1809. (*Meriam* v. *Harsen*, 2 Barb. Ch. 232.) There is no proof that Balm Johnson Cosine ever entered into possession under the deed of 1759, and the facts established show that if he ever was possessed of the farm it was as tenant and under an agreement to pay his father a stipulated sum during his natural

life, of which payment there is no proof. (*Mills* v. *Hoag*, 7 Paige, 18; *Johnson* v. *Everett*, 9 id. 636; *Dickenson* v. *Codwise*, 11 id. 189; *Williamson* v. *Field*, 2 Barb. Ch. 281; 1 id. 330, 331; *Gelston* v. *Hoyt*, 1 Johns. Ch. 543.) The Harsen deed of 1809 effectually released to Jacob Harsen all the rights and claims that Cornelius Cosine ever had in or to so much of the Bloomingdale road as formed any part of the premises in question. (*Mott* v. *Mott*, 68 N. Y. 246; *N. Y. S. Co.* v. *Stern*, 46 Hun, 206; *In re Ladue*, 118 N. Y. 213.) If the city of New York had not already acquired the title to the bed of the Bloomingdale road prior to 1847, it became vested with such title by the act of 1847 and the proceedings taken under that act to condemn the roadbed for a street. (*Bloodgood* v. *M. & H. R. R. Co.*, 18 Wend. 9; *Rexford* v. *Knight*, 11 N. Y. 308; *Heyward* v. *Mayor, etc.*, 7 id. 314; *Kane* v. *N. Y. E. R. R. Co.*, 125 id. 165; *Sweet* v. *B., N. Y. & P. R. Co.*, 79 id. 293; *In re Seventeenth Street*, 1 Wend. 262; *White's Bank* v. *Nichols*, 64 N. Y. 65; *Holloway* v. *Delano*, 18 N. Y. Supp. 704.) If any question as to the title of the city could have been successfully raised at the time of the confirmation of the commissioners' report, March 31, 1849, it does not follow that such question could be successfully raised now. (*Eldridge* v. *City of Binghamton*, 120 N. Y. 309.) By the confirmation of the commissioners' report July 5, 1872, the fact that the fee of the bed of Broadway was then in the city became *res adjudicata*. By this confirmation the commissioners' report became a judgment which could not be reviewed, and cannot be assailed collaterally. (*In re Parks*, 73 N. Y. 560, 565; *King* v. *Mayor, etc.*, 36 id. 132; *In re Central Park*, 50 id. 493; *Fisher* v. *Mayor, etc.*, 57 id. 344, 346; *In re Arnold*, 60 id. 26; *Dolan* v. *Mayor, etc.*, 62 id. 472; *Leavitt* v. *Wolcott*, 95 id. 213; *C. N. Bank* v. *Kupper*, 33 id. 618.) The right of a claimant to open or vacate the order confirming the report of commissioners is by the statute limited to ten years. (Code Civ. Pro. § 388; *In re Striker*, 23 Hun, 647; 85 N. Y. 629.) The deeds from the heirs of Balm Johnson

Cosine, under which the plaintiff claims, were void for champerty. (1 R. S. 738, § 147; *Church* v. *Schoonmaker*, 115 N. Y. 570; *Pearce* v. *Moore*, 114 id. 256; *Thurman* v. *Cameron*, 24 Wend. 87; *Christie* v. *Gage*, 71 N. Y. 189; *Sands* v. *Hughes*, 53 id. 295; *Jackson* v. *Elston*, 12 Johns. 451; *C. L. N. Co.* v. *K. N. Co.*, 37 Hun, 9.) The plaintiff failed to prove that he, his ancestor, predecessor or grantor was seized or possessed of the premises in question within twenty years before the commencement of this action. (Code Civ. Pro. § 365.)

PECKHAM, J. In 1759 Cornelius Cosine, the elder, was the owner of a farm of about two hundred acres, the northern and southern boundaries of which were nearly, but not quite, coincident with the lines of what are now Fifty-seventh and Fifty-third streets, in the city of New York. The North river formed the western boundary, while the eastern was formed by what was termed in the descriptions of the day, the "common lands" of New York. The Bloomingdale road, running about north and south, cut through the farm, leaving land on each side of it. It ran a little distance west of and parallel with the line now forming Seventh avenue.

If a full recital were given of all the facts relating to the disposal of the farm thus mentioned, and out of which has grown the present controversy, we should be taken back to colonial times when, in the year above mentioned (1759), the elder Cosine is alleged to have deeded this farm to his two sons, Cornelius, Jr., and Balm Johnson Cosine, and thereby excluded three other living children from any benefit arising from his ownership of such farm. We do not intend to enter upon either a recital of the facts surrounding and following the claim made under this alleged deed, or to make a statement of the many legal questions which, in one aspect, abound in this case. We refrain from so doing because, in our opinion, the case can and should be decided for the defendant upon a question of fact, and, therefore, a discussion of the interesting legal propositions becomes unnecessary.

This question of fact is based upon a deed to one Jacob Harsen and wife from the widow and heirs of the above-mentioned Balm Johnson Cosine, one of the two grantees in the alleged deed from the elder Cosine, made in 1759. This deed to the Harsens was executed in 1809, and it may be assumed all questions arising prior to that date should be decided in favor of the plaintiff. The deed of 1809 conveyed to the Harsens the southern portion of the old Cosine farm, extending from the common lands of New York on the east to the North river on the west, and through it ran the Bloomingdale road. The portion thus conveyed consisted of all the land lying on both sides of the road, between the northern and southern boundaries of such portion. The deed describes, by two separate descriptions, the lands conveyed, one description being used for the land on the west and the other for the land on the east side of the road. The land on the west was first described, and then the deed continues, "and the other of the said two lots, pieces or parcels of land, begins at a point on the east side of the Bloomingdale road aforesaid,  *  *  *  and runs from thence north  *  *  *  along the east side of said road," a certain number of feet, and the description is continued until the line is brought to the place of beginning.

It is argued by the defendant that the deed in fact conveys the fee in the road. He claims that the parties to it were then engaged in carrying out a compromise in regard to the title to this farm, and that it was clearly the intention of the grantors to convey to the grantees all the interest which the former had in any portion of the farm contained within the limits of the description, and that there could have been and was no intention to reserve from such conveyance any interest in the land forming the bed of the road which ran through this portion of the farm.

It is difficult to conceive of any reason for consciously reserving or failing to convey the roadbed of this road, subject to the public easement. We cannot think it was ever really intended, yet, nevertheless, we are disposed to hold that, by the language actually used, the grantors in fact failed to

convey any portion of the land forming the bed of the road in question.

The plaintiff alleges that the premises in question formed a part of the southern portion of the Cosine farm and also a part of the bed of the Bloomingdale road at the date of the deed in 1809, and that the premises did not pass to Jacob Harsen and wife by virtue of that deed.

The plaintiff claims, by various mesne conveyances, a certain portion of the title which he alleges was in the widow and heirs of Balm Johnson Cosine at the time of the execution of the deed by them to the Harsens. The respondent, on the other hand, claims title under several conveyances which passed to him all the title which the Harsens took from the widow and heirs as stated. It is further alleged, on the part of the defendant, that the premises in question did pass by the deed of 1809, and that such premises formed at that time no part of the old Bloomingdale road.

The defendant sets up many other defenses to the claim of the plaintiff, but if the plaintiff has failed to prove that the land in controversy formed a part of the Bloomingdale road, and that, therefore, it did not pass to Jacob Harsen and wife by virtue of the deed to them in 1809, he has, in that event, failed to prove title to the *locus in quo.* He maintains that he has made such proof, while it is claimed on the part of the defendant that he has not.

This is the question of fact arising out of the execution and delivery of the deed of 1809. We think the plaintiff has failed to show that the premises did form a part of the road-bed at the time when the deed was executed.

As the action is one in ejectment, the burden is upon the plaintiff to show that he has title to the premises and he must recover, if at all, upon the strength of that title and not by reason of any weakness in that of his adversary.

The question whether the premises formed part of the road-bed in 1809, depends upon the width of the road at that time. The western boundary thereof is not disputed, and it always remained fixed and unaltered.

If, in 1809, the road was actually of the width of four rods, then these premises may have formed part thereof; and if the road, at that time, were only of the width of two rods, they did not form part of such road and they passed to the Harsens under the deed to them.

The referee finds as a fact that the road, at the time of the death of the elder Cosine, was only two rods wide at the point in question. We think there is evidence upon which to base this finding. He also finds that, upon maps made in 1820, the road appeared to be of the width of four rods at this point, and that the widening of the road prior to 1820 was exclusively from the eastern side of the road. He does not find when the widening actually took place, nor does he, in terms, find what was the width in 1809, and the evidence is not of such a nature as to compel a finding that a widening took place prior to 1809. Indeed, the plaintiff claims that the whole matter of any widening of the road is a myth, and that the width was never less than four rods in law, whatever may have been the fact as to the width which was kept in repair and actually used. But if the space really occupied by and used as a road in 1809 were but two rods in width, we think that a description in a deed conveying 'land bounded by the road should, in the absence of some words indicating the contrary, be construed as referring to the actual road as worked, kept in repair and used, and not to an abstract legal line, invisible, unused and practically unknown.

The road was laid out in 1703 (or possibly re-established under the act of that year), a very early period in the history of the laying out of roads under statutory authority in this state. (Bradford's Ed. New York Colony Laws, 1691–1724, page 52.) The act provided for laying out the road four rods wide, and commissioners to carry the act into effect were therein appointed. There was not, however, any provision made for the payment to the owners for the land to be taken for the highway, nor was there any provision for a compulsory taking of the land for highway purposes. The land taken for the laying out of the road must, therefore, have been taken by the permission

or acquiescence of the owners. While the land was in actual use as a part of the highway, it was under the control of the commissioners, but if any part ceased to be used, worked or kept in repair as a road, such non-user in that case might very likely amount to an abandonment of the land not used, and in that event a deed bounding lands by the road, would, as has been said, probably be construed to mean the road as actually worked and used.

Although the act of 1703 provided for the laying out of roads four rods wide, such width was unnecessary, and accordingly, in 1751, by chapter 910, an act was passed for keeping in repair the public road through Bloomingdale division, which included the point in controversy. (Laws of New York, 1691 to 1773, Van Schaack's edition, page 303.)

This act recited that, in pursuance of the act of 1703, a road had been laid out of the breadth of four rods through Bloomingdale district or division, and the inhabitants of the district, who were but few in number, had been under great hardships, not only by keeping the said road in repair ("which was double the breadth necessary"), but also by being obliged to work on repairing the post-road between New York and Kings Bridge; therefore, in order to remedy these hardships, it was enacted that a surveyor should be appointed, and such surveyor was then required to view and survey this road or highway, "and lay out the same of the breadth of two rods as the same now runs," and, thereafter, the surveyor was to call out the inhabitants upon due notice and work the road, repairing, cleaning, amending and making good the same.

This act is not of the limited effect spoken of by plaintiff's counsel. It gave the right to and made it the duty of the surveyor to lay out the road " of the breadth of two rods," and under the act the surveyor was bound to so lay it out. It was not a mere permission to thereafter keep the road in repair for a width of two rods only, and under the act the laying out of the road by the surveyor of the width of two rods "as the same now runs," would seemingly operate as an abandonment of the user of the two rods not included in such laying out,

and upon such abandonment the right to occupy the land would revert to the abutting owner.

It is true the case contains no evidence of any legal proceedings on the part of the surveyor appointed under the act of 1751, laying out the road of the width of two rods only "as the same now runs." The act did not provide any particular procedure for so laying out the road nor for the filing in any public office of the description of the road so to be laid out under the decision of the surveyor. The absence of such evidence is not to be wondered at.

The proceedings taken and the decisions arrived at in those days regarding such matters as these, particularly when no statute commanded it, were not often made matters of record, and, as we are inquiring regarding things which may have happened more than a century and a quarter ago, we need not be surprised at the scantiness of the evidence we are enabled to procure. That it was a hardship to keep this road in repair for a width of four rods is reasonably certain and is so stated in the act of 1751. It is also there provided that the road shall be laid out by a surveyor, of the breadth of two rods only. It was the official duty of the surveyor to do it. It would have been a criminal neglect on the part of such officer to fail to lay out the road of the width of two rods as directed in terms by the statute. In such case it will be intended that he performed his duty, unless the contrary be shown. (Broom's Legal Maxims [8th ed.], 949.) There is here no evidence which shows non-performance.

I think it entirely justifiable, under such circumstances, to presume that the surveyor, who was a public officer, performed his official duty, and that the provisions of the act were in fact carried out, and the road was actually thereafter laid out of the width of two rods only. There would seem to be no dispute as to the western boundary of the road, and if the road were only two rods wide there is no dispute that the deed to the Harsens passed the title to this property because it was in that event no part of the old road. We have no evidence as to the changing of fences at this point subsequent

to the act of 1751.  But we have no evidence of the existence of any fences before that time along the road, assuming its width of four rods.  There is enough in the evidence to permit the inference which the referee has drawn, that in 1765, at the time of the death of the elder Cosine the road was only two rods wide.

There is evidence drawn from the map of the Hopper farm, made in 1782 by Evert Bancker, Jr., city surveyor, that the road at that time and at that point was only two rods in width.  The Hopper farm was situated on the south of the Cosine farm.  Although the map was for private parties, and was in no wise conclusive against the plaintiff, yet it was evidence of the fact that, in 1782, a map was made by the official city surveyor, which included this road, and it was laid down on that map as but two rods wide.  This is some evidence of a cotemporary nature as to how the fact appeared to one who was the city surveyor and engaged in making a survey of a farm near the *locus in quo*, and at a point where the width of the road would probably be the same.

This may be, perhaps, regarded as slight and unsatisfactory evidence as to the actual width of the road, and we may admit it would be if it were applied to matters of recent occurrence. We must continually bear in mind that we are inquiring as to matters which happened more than a century ago, and we must be content to rest upon such slight evidence as survives those times.

By chapter 61 of the Laws of 1787, the common council of New York were declared commissioners of highways, and, as such, they were authorized to widen or alter, to not exceeding four rods wide, roads or highways laid out in that city or county, and they were authorized in widening or altering a highway to take the necessary land, and to provide payment therefor, but no compensation was to be made to anyone who had encroached on any such highway.  The plaintiff's counsel says there is no evidence that any compensation was paid the Cosines for land taken for widening the Bloomingdale road under this act, and that there never was any such widening.

His idea is that the road had always been four rods in width, and that the act of 1751 simply permitted the inhabitants to keep two instead of four rods in repair. As has been said, we think he erroneously limits the force of the act of 1751, and that, under that act, we may regard the road, in the absence of any evidence to the contrary, as reduced to two rods in width. And it is true that it does not appear at what time any widening was effected of this Bloomingdale road prior to 1820. At that date it does appear that there were maps made by officials of the city in which the road is laid down at this point as of the width of four rods. We think there is no evidence which compels a finding that such alteration had been made prior to 1809, when the deed to the Harsens was executed.

There are certain resolutions of the common council of New York which were put in evidence. In 1793 there was passed a resolution providing for the opening of this road to "its proper and legal width of four rods." Counsel for plaintiff, however, himself admits that this resolution seems to have been allowed to sleep. In 1799 another resolution was adopted, appointing a committee to see that the abutting owners (without naming them or describing their lands) moved their fences back. The resolution is stated to have been taken upon "a petition for the opening of the Bloomingdale road to its proper width of four rods." These resolutions do not show a widening of the road at that time, nor do they prove that in point of fact there had never been any other width than that of four rods and that anything less than that width had been accomplished by encroachment. At most it is proof of a claim advanced on the part of the city that the Bloomingdale road had a width of four rods. The act of 1787 gave the city the right to widen or alter roads in the county of New York to a width of four rods and to take the necessary land and to pay for it. There are no proceedings shown to have been taken under that act for the purpose of widening the road in question. If we may presume the road was laid out of the width of two rods under the act of 1751, then the

burden is on the plaintiff to show some change in its width so that in 1809 it was four instead of two rods wide.    This burden is not sustained by him.

The case contains no evidence of any further legislative or municipal action in any way affecting this part of the road until 1847, when certain proceedings were instituted in regard to Broadway.

Thus, as late as in 1799 it would appear that the road was not in fact and actually opened and worked to the width of four rods.

The mere resolutions of the common council do not prove the fact that proceedings had been taken to acquire the title to lands which might be necessary for the purpose of widening a road.    And if such proof had been given we do not think it can be assumed in the absence of evidence, that the committee appointed by the common council to see that the abutting owners moved their fences back, performed that duty or exercised that power.

There is a distinction between presuming as to the action of a public officer appointed by virtue of the provisions of a statute by which it is made his official duty, and he is directed to himself perform a certain act, and a presumption as to the result of a presumed action of a committee of a common council in carrying out the terms of a resolution empowering them to see that private persons do certain acts.    The presumption that he has done his duty, which properly attaches to a public officer in such circumstances, cannot and ought not to be carried to the extent of presuming (without any evidence whatever) that the committee proceeded to attend to the business intrusted to it by the common council, and that the abutting owners, pursuant to the presumed action of the committee, actually removed their fences which had, up to that time, encroached upon the public highway.

We cannot, in such case, presume action of which there is not the slightest evidence.    We come, then, to the proposition that there is an utter lack of evidence that this road was, in 1809, more than two rods wide in fact.

If, however, the legal width may have been four rods, if the road was only used, worked and repaired to the width of two rods, and the other two rods, so far as visible boundaries are concerned, were a portion of the abutting land, we think a description of the land, as bounded by the east side of the road, should be construed to mean the visible road as in actual use, and not the ideal road of a width of four instead of two rods.

Counsel for plaintiff says that the defendant admitted at the General Term that between the death of the elder Cosine, in 1765, and the execution of the deed to the Harsens in 1809, the road had been widened from two to four rods. It would seem the concession was made, in the course of an argument to prove that the division of the farm, in 1809, was made with reference to its condition at the time of the death of the owner in 1765. The defendant makes the same statement here. We do not put our decision on that ground. We are more inclined to the view that, in 1809, there is no evidence or finding that the road was then over two rods in width and the deed to the Harsens included the *locus in quo,* because it lay east of the two rods forming the road.

Upon the facts the plaintiff failed to make out a title to the premises, and the judgment for the defendant should, therefore, be affirmed, with costs.

All concur.

Judgment affirmed.