JAMES BRADLEY, Respondent, *v.* THOMAS I. CRANE, Appellant.

Appeal — review of decision of Appellate Division upon submitted controversy — rule for construction of grants of land for public use — when grant of land for public highway conveys only an easement over the lands therein mentioned.

The Court of Appeals has no jurisdiction, in reviewing the decision of an Appellate Division upon a submitted controversy, to draw inferences of fact from the facts within the stipulated case. (*Marx* v. *Brogan*, 188 N. Y. 431, followed.)

The language of an instrument which transfers property for public use, in lieu of condemnation proceedings, must be construed strongly and strictly in favor of the landowners. The law will not, by construction, effect through the instrument a grant of a greater interest or estate than was essential to the public use for which the grant is sought. No implication is permissible that the instrument granted an estate greater than was absolutely necessary to satisfy its language and object.

Under a statute enacted in 1703 commissioners, who were appointed for the purpose of laying out and regulating highways, made a return that they had viewed and laid out a highway contemplated by that act, and which was in fact part of the Bloomingdale road. It was originally laid out to the width of four rods. *Held*, that the action and the certificate of the commissioners, under and in accordance with the provisions of that act, gave the road so laid out its original existence as a public, common and general highway, and that the public acquired in the land thereof only the easement essential to the use and enjoyment thereof as such.

Subsequently, in pursuance of legislative action, the legal width of the Bloomingdale road was made two rods instead of four, and the easement

of the city of New York in two rods thereof was thereupon surrendered. Thereafter the common council took such proceedings under an act of the legislature, to open the Bloomingdale road to the width of four rods, as that by an instrument dated March 24, 1795, certain persons conveyed to the " Mayor, Aldermen and Commonalty of the City of New York, and their successors, all that the parcel of their respective lands, or so much thereof as may be necessary for the said road of the breadth of four rods as aforesaid, to have and to hold the said parcel of the said respective roads, or so much thereof as may be necessary for the said public road as aforesaid, with the appurtenances, unto the said Mayor, Aldermen and Commonalty of the City of New York, and their successors, to and for the sole and only use of a public road for ever;" this was the road in question. *Held*, that while the act, under the authority of which the city was then acting, conferred upon the city the power to acquire, through condemnation proceedings, the fee of the land required for the road, it did not by its language appropriate the fee or compel the city to take the fee, and there is no presumption that the grantors intended to convey all their estate in the land. The intention and purpose of the parties did not necessitate the conveyance of the fee of the land and would be completely fulfilled by the easement therein of the free and common right of way to the public, with the powers and privileges incident thereto. Hence, the deed of March 24, 1795, conveyed to the city of New York only an easement over the lands therein mentioned.

*Bradley* v. *Crane*, 133 App. Div. 889, reversed.

(Argued December 2, 1910; decided February 7, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered August 25, 1909, in favor of plaintiff upon the submission of a controversy under section 1279 of the Code of Civil Procedure, adjudging that the defendant specifically perform a contract for the purchase of certain land.

July 25, 1907, the parties, the plaintiff as vendor and the defendant as vendee, entered into a contract whereby the plaintiff agreed to sell and convey unto the defendant, who agreed to purchase, a described parcel of land, performance of which was to be completed on August 29, 1907. The defendant refused performance upon the ground that the plaintiff did not have a good and marketable title to a part of the contracted land contiguous to the southern line of One Hundred

and Second street and one hundred and seventy-five feet easterly from the easterly line of Broadway of New York city and " being in the westerly half of what was formerly known as the Bloomingdale Road in the City of New York." The action is to compel the defendant to specifically perform said contract. The parties stipulate that if a certain instrument of March 24, 1795, conveyed to the city of New York the fee of the lands therein mentioned and not a mere easement therein, the plaintiff's title is good; and if it conveyed only an easement therein, the title tendered the defendant was not good and marketable. The instrument, after reciting that the mayor, aldermen and commonalty of the city of New York have lately laid out, regulated and continued the public highway or road, commonly called the Bloomingdale road, of the breadth of four rods through the lands of eight named individuals, of whom one is John Jones, proceeds:

"And for and in consideration of the sum of five shillings to the said persons respectively above named paid by the said Mayor, Aldermen and Commonalty of the City of New York, they the said persons above named, to wit (naming the eight individuals), have and each of them doth, for himself, his heirs and assigns, hereby grant, release and forever quitclaim unto the said Mayor, Aldermen and Commonalty of the City of New York, and their successors, all that the parcel of their respective lands, or so much thereof as may be necessary for the said road of the breadth of four rods as aforesaid, to have and to hold the said parcel of the said respective lands, or so much thereof as may be necessary for the said public road as aforesaid, with the appurtenances, unto the said Mayor, Aldermen and Commonalty of the City of New York, and their successors to and for the sole and only use of a public road forever."

Then follows an ordinary witness clause and the sealed and witnessed signatures of the eight individuals, of whom John Jones owned the land in question.

The additional facts, so far as material, are stated in the opinion.

*Edward E. Sprague* and *Uriah W. Tompkins* for appellant. The weight of authority is in favor of the appellant. (*Mitchell* v. *Einstein*, 42 Misc. Rep. 358; 105 App. Div. 413; *Mott* v. *Eno*, 181 N. Y. 346; *Deering* v. *Reilly*, 167 N. Y. 184; *De Peyster* v. *Mali*, 92 N. Y. 362.) The release must be construed in the light of the highway laws then in force and as granting only such interest as was required for public uses — an easement. (Hoffman on Corporation of New York, 382; Gerard on City Water Rights, Streets & Real Estate, 148; *Van Amringe* v. *Barnett*, 8 Bosw. 357; *Matter of Riverside Park*, 63 Barb. 282; *Fearing* v. *Irwin*, 4 Daly, 385; *Mott* v. *Mott*, 68 N. Y. 246; *Augustine* v. *Britt*, 80 N. Y. 647; 15 Hun, 395; *Meade* v. *Riley*, 18 J. & S. 20; 102 N. Y. 669; *De Peyster* v. *Mali*, 27 Hun, 439; 92 N. Y. 262; *Hollaway* v. *Delano*, 139 N. Y. 390; *Matter of Mayor*, 20 App. Div. 404; affd., 155 N. Y. 638; *Matter of Barclay*, 91 N. Y. 430; *People ex rel. Dean* v. *Assessors*, 59 Hun, 407; 128 N. Y. 654; *Haberman* v. *Baker*, 128 N. Y. 253; *Matter of Ladue*, 118 N. Y. 213; *Blackman* v. *Riley*, 138 N. Y. 318; *Deering* v. *Reilly*, 167 N. Y. 184.) Chapter 61 of the Laws of 1787 contemplates the acquisition of an easement. (*Hutson* v. *Mayor, etc.*, 5 Sandf. 289; *Cornell* v. *B. & O. T. Co.*, 25 Wend. 365; *Coykendall* v. *Durkee*, 13 Hun, 260; *N. T. Co.* v. *Smith*, 15 Barb. 355; *Town of Galen* v. *Clyde, etc., Co.*, 27 Barb. 543; *People* v. *Town Auditors*, 74 N. Y. 310.) The grantors did not intend to convey the fee. *Harriot* v. *Harriot*, 25 App. Div. 245; *Matter of Brookfield*, 176 N. Y. 138.)

*David B. Ogden* and *Philip S. Dean* for respondent. The deed was made upon a good consideration recited in the instrument itself and sufficiently described the premises granted. (*Nicoll* v. *N. Y. & E. R. R. Co.*, 12 N. Y. 121.) The estate granted was a fee. (*Nicoll* v. *N. Y. & E. R. R. Co.*, 12 N. Y. 121.) The habendum did not and could not cut down the estate so granted. (*Vail* v. *L. I. R. R. Co.*, 106 N. Y. 283; *Tifft* v. *City of Buffalo*, 82 N. Y. 204;

2

*De Witt* v. *E. T. Ry. Co.*, 134 N. Y. 495; *Kenney* v. *Wallace*, 24 Hun, 478; *Buttery* v. *R., W. & O. R. R. Co.*, 14 N. Y. S. R. 131; *Bd. of Education* v. *Reilly*, 71 App. Div. 468; *Hill* v. *Priestly*, 52 N. Y. 635; *U. S.* v. *Library*, 98 Fed. Rep. 512; *Comm.* v. *Young*, 59 Fed. Rep. 96; *Rawson* v. *School Dist.*, 7 Allen, 125; *Ward* v. *N. E. S. Co.*, 1 Cliff. 565.)

COLLIN, J.    This litigation is based upon the assumption that the effect of the conveyance of March 24, 1795, must, because of the indefinite language thereof, be determined through interpretation proceeding from and guided by its contents and a knowledge of the facts and conditions existing when and under which it was executed, as submitted in the stipulated case.

June 19, 1703, a colonial act entitled " An Act for the Laying out Regulating Clearing and preserving Publick Comon highways thro'out this Colony " appointed three persons commissioners of highways for each of the various counties of the colony, other than the county of New York, and three for the city and county of New York, and provided *inter alia* " that there be laid out, preserved and kept forever in good and Sufficient Repair one Publick, Common & General highway to extend from the Scite of the City of New York thro' the City and County of New York and the County of West Chester of the breadth of four Rod English Measure at the least, to be Continue and remain forever the Publick Common General Road and highway from the said City of New York to the adjacent Collony of Connecticutt." This act was continued in force until 1708 by subsequent acts. The commissioners appointed by the act, by their certificate dated June 16, 1707, made a return that they had viewed and laid out the highway contemplated by the part of the act above quoted and which was in fact that part of the Bloomingdale road, as it came to be designated, extending from the present Twenty-first street and the Bowery to the present One Hundred and Sixteenth street. The stipulated case says: " The Blooming-

dale Road was originally laid out under this act [of June 19, 1703] to the width of four rods." This act made no provision for compensation to be paid to the owners of the lands through which the road should run and permits, under the principles that when the language of the statute will bear a construction which will leave the fee in the landowner, that construction will be preferred, and that the absence from the statute of a provision for compensation is, in and of itself, evidence that an easement only was to be acquired by the public, the conclusion pressed by defendant that the public acquired in the lands of the road as laid out by the commissioners only the easement essential to the use thereof as a public highway. The plaintiff does not accept as the meaning of such stipulated fact that the commissioners under and in pursuance of the act of 1703 created a new public road or gave to an existing road an original status as a public road, and contends, (1) the road was lawfully in existence at the passage of the act, and (2) the city of New York had acquired in fee the lands constituting it, because between the surrender in 1664 by the Dutch to the English of their possessions upon the Hudson river, and the act of 1703, one act only of the colonial assembly, that of October 1, 1691, entitled "An Act for regulating the buildings, streets, lanes, wharfs, docks and alleyes of the Citty of New Yorke," authorized the laying out of roads, and the city of New York proceeding thereunder acquired by virtue thereof the fee ; or in case the road existed at the surrender by the Dutch, then the fee thereof, being in the Dutch government, passed to the British crown, and by virtue of the Dongan charter of 1686 to the city of New York. (*Dunham* v. *Williams*, 37 N. Y. 251.) Plaintiff rests his position that the road was in existence upon and prior to the passage of the act of 1703 upon two facts: the one, that the act of 1703 contained a provision "that all the Roads and publick Highways by this Act Intended shall be of four Rod at the Least in Such as are now already used and laid out, and of the breadth of Six Rod at the least where any new Publick Road or Highway shall hereafter by virtue of this Act

be laid out;" the other, the certificate or return of the commissioners stated as a course of the road "forward as the said road now lies." We have not jurisdiction in reviewing the decision of an Appellate Division upon a submitted controversy to draw inferences of fact from the facts within the stipulated case. (*Marx* v. *Brogan*, 188 N. Y. 431.) Plaintiff's counsel does not ask us to determine whether a road laid out in a described manner was a legal road, but to find, by inferences from the two facts stated, that the Bloomingdale road was laid out prior to 1703, and in a manner and method investing it with legality. This we may not do; and we hold that the statement above quoted from the stipulated case means that the action and the certificate of the commissioners, under and in accordance with the provisions of the act of June 19, 1703, gave the road laid out by them its original existence as a public, common and general highway. The two facts, already stated, urged by plaintiff's counsel as contradicting and making inconclusive such statement, do not work such result. The act of 1703 contained the special and express provision that the road and highway from the said city of New York to the "adjacent Collony of Connecticutt" should be "of the breadth of four Rod English Measure at the least," thereby withdrawing it as a new road from the general provision thereof that any new public road or highway should be of the breadth "of Six Rod at the least." Moreover, the act provided that there should be "laid out" a public, common and general highway and the commissioners certify that they "have viewed and laid out" the highway. We may presume that the statute was in all its parts the deliberate and well-considered act of the colonial assembly, deemed by it essential to the purposes embraced within its language and that those purposes were, within its view, requisite or desirable for the convenience and prosperity of the province. The expressions "laid out" and "have viewed and laid out" must be given, in the absence of a reason to the contrary, their usual and ordinary meaning, that land constituting the highway had been, by the action expressed by those terms, given

the status and subjected to the servitude of a public highway. There is, therefore, in the fact that the breadth of the highway, as laid out under the act of 1703, was four rods, no support for the inference that it was a public highway prior to the passage of that act. Nor is there support for such inference in the fact that the return of the commissioners described as a course, "northerly and so by Great Kills and forward as the said road now lies unto Theunis Edis's and Capt. De Keys' land through the said Edis's land." The use of the words " as the said road now lies," as a designation of the course of the highway being laid out, does not indicate that the road, the course of which was followed, was a lawful highway rather than a mere convenience in description. The warpaths and trails of the Indians became the paths and roads of the early settlers without thought or heed of legal rights or procedure. It is a matter of common knowledge that in a territory new to civilization or sparsely peopled the ways of easiest or safest access to settlements and homes become through use alone paths and roads. We hold that the part of the Bloomingdale road, which was between the present Twenty-first street and the Bowery and One Hundred and Sixteenth street, became a public highway through the action of the commissioners under the act of 1703, and that the public acquired in the land thereof only the easement essential to the use and enjoyment thereof as a public highway.

The road of 1707 remained unchanged until after 1751, in which year an act was passed relating thereto. It recited that, in pursuance of the act of 1703 the commissioners therein named " did lay out a Road of the breadth of Four Rods from the now dwelling house of John Horne (present Twenty-first street and the Bowery) thro' Bloomendale District or Division to the now Dwelling house of Adrian Hoogelandt " (present One Hundred and Sixteenth street), and the inhabitants of that district, "who are but few in Number, have been under great hardships not only by Keeping the Said Road in Repair (which is double the breadth Necessary) but also by having been obliged to Work on the Repairing the

Post Road between New York and Kingsbridge," and pro-
vided, in order to remedy the said hardships and to better
keep the road in repair, for the appointment annually by the
justices of the peace of a surveyor of said road, and the sur-
veyor first to be appointed " is hereby Required to view and
Survey the Said Road or Highway and lay out the Same of
the Breadth of Two Rods as the Same now Runs." In pur-
suance of this act, the legal width of the Bloomingdale road
was made two rods instead of four, and the. easement of the
city of New York in two rods thereof was thereupon surren-
dered and abandoned. (*Blackman* v. *Riley*, 138 N. Y. 318.)

March 21, 1787, the legislature of the state of New York
passed an act, chapter 61, limited in its operation to the city
and county of New York, which by its first section appointed
the mayor, aldermen and commonalty commissioners to regu-
late and keep in repair existing highways, and to lay out,
regulate and keep in repair such other public roads and high-
ways as should thereafter be laid out in the city and county,
and by its second section conferred upon said authorities the
power to " widen or alter all public roads and highways
already laid out in the said City and County to such con-
venient breadth not exceeding four rods nor less than two
rods as the said commissioners shall adjudge fit to make them
passable for horses and carriages." It made provision for
the assessment and payment of compensation to the owners
of the land, according to their several respective interests and
estates, taken by the commissioners in widening or altering
any public road or highway then existing, or laying out any
new public road or highway, and that the payment should be
binding to all intents and purposes against the said owners
and their representatives and assigns, and a full authority to
the said commissioners to cause the said land to be converted
to and used for the purpose for which it was taken. In May,
1793, the common council of the city of New York, pro-
ceeding under the act of March 21, 1787, ordered that
the Bloomingdale road from its commencement at Horn's
house (Twenty-first street and the Bowery) to Nicholas De

Peyster's barn (One Hundred and Sixteenth street) be immediately opened to its proper and legal width of four rods, "and thence to the Post Road, at Mr. Watkins, of the same width if the proprietors will give the land;" and appointed a committee to attend the opening of the said road and confer with the proprietors of the land on the subject. From Nicholas De Peyster's barn (Adrian Hoogelandt's house) to the Post road was the laying out of a new road. On August 25, 1794, the common council ordered "the road committee to inquire into and report on the expediency of continuing the Bloomingdale Road until it intersects the Post Road on Harlem Heights and what the breadth of it ought to be, to the end that the proprietors of the land through which the said road will pass may be applied to as to their willingness to give the land for the purpose." The foregoing historical survey presents the facts and conditions as they existed at the time the instrument of March 24, 1795, was executed, and at April 7, 1795, when it was "deposited in the clerk's office and recorded." On July 13, 1795, the road committee reported to the common council that they had "caused a survey to be made of a continuation of the said road from the place where the ancient road terminated at the barn of Nicholas De Peyster, which is the place where the dwelling house of Adrian Hoaglandt formerly stood, continued in a northerly direction thro' and across the lands" of seven named parties; "that all of the said persons, except William Molonaer and John Meyer, have released or are willing to release the said road to this corporation"— a reference to the instrument in question. On September 4, 1797, the common council appointed a committee "to direct the proprietors of the land where the Bloomingdale Road is not of its proper width to remove their fence and then to direct the Road Master to work and put the road in good order." The land here involved was required for and in the widening of the road from two to four rods, pursuant to the action of the common council, and became a part of the western half thereof. On March 7, 1868, the Bloomingdale road was abandoned through the

agency of the board of commissioners of the Central Park, acting under chapter 697 of the Laws of 1867.

We now turn to interpreting, under such aid and enlightenment as the facts existing at that time afford, the instrument of March 24, 1795. The fact that the city then held a highway easement merely in the two rods of land which formed the road is or may be a reason why the parties may not have intended that the city of New York should receive under the instrument an estate other than an easement, because it would have no serious reason for acquiring in this land to be used in widening and continuing the road an interest superior to that held in the existing road. While the act, chapter 61 of the Laws of 1787, under the authority of which the city was acting, conferred upon the city the power to acquire, through condemnation proceedings, the fee of the land required for the road, it did not by its language appropriate or compel the city to take the fee. It empowered the city to acquire by grant or condemnation either the fee or an easement. Whether the one or the other was in a given case taken would be a matter of proof. (*Mott* v. *Eno,* 181 N. Y. 346.)

The language of the instrument, like that of the statute of 1787, was capable of transferring a fee or an easement. It did not definitely specify the character and nature of the estate conveyed. Our attention has not been called to, and we do not find any statute, then existing, which created any presumption that the grantors intended to convey all their estate in the land. The intention and purpose of the common council was to open the road then in use to the legal width of four rods and continue it to an intersection of the Post road if the proprietors of the land were willing "to give the land for the purpose." The record of its proceedings speaks of this instrument as "a release from James Striker *et al.* to corporation of so much of their respective lands as is required to continue the Bloomingdale Road" and the road committee thereof reported July 13, 1795, that the proprietors, except two, "have released or are willing to release the said road to

the corporation." The intention of the grantors is expressed by the language of the recital preceding the operative words of the conveyance : " Now, therefore, know ye that in order to show the willingness and consent of the said persons respectively above named, that parcel of their respective lands, or so much thereof as may be necessary for the said road of the breadth of four rods, should be taken and held by the said Mayor, Aldermen and Commonalty of the City of New York for the purpose of a public road as aforesaid." The intention and purpose of the parties did not necessitate the conveyance of the fee of the land and would be completely fulfilled by the easement therein of the free and common right of way to the public, with the powers and privileges incident thereto. Such was the estate of the city in the two rods of the then existing road, and such was the estate acquired generally for public roads and highways under the common law. There is nothing inconsistent in the public use of land as a road and the retention by the landowners of the fee, subject to the easement.

We must construe the language of the instrument, which transfers the property for public use, in lieu of condemnation proceedings, strongly and strictly in favor of the landowners. The law will not, by construction, effect through the instrument a grant of a greater interest or estate than was essential to the public use for which the grant was sought. No implication is permissible that the instrument granted an estate greater than was absolutely necessary to satisfy its language and object. (*Kraeer* v. *Penn. R. R. Co.*, 218 Pa. St. 569 ; Lewis on Eminent Domain [3d ed.], sects. 485, 468.) The parties might by their contract create in the city a less estate than that which the statute of 1787 authorized it to acquire. The grantors expressed their willingness and intention that the city should take and hold for the purpose of a public road of the breadth of four rods, and they granted, released and forever quitclaimed to the city so much of their respective lands " as may be necessary for the said public road" to have and to hold for " the sole and only use of a public road for-

ever." Specific lands were not described or designated by them; a specific estate was not named. The measure of the grant was the necessity for the road. So much of land or estate as that necessity did not require and exact remained in the grantors. The limitation expressed in the words of conveyance was as applicable to the interest or estate to be taken and held by the city as to the quantity of land to be subjected to the public servitude. No reason or purpose demanded or permitted that the city should take an estate greater than the opening and extending of the road compelled and superfluous thereto, which did not likewise demand that it take an excessive quantity of land. In fact, excess of both land and interest or estate was by the conveyance forbidden it. (*Hill* v. *West. Vermont R. R. Co.*, 32 Vt. 68 ; *Matter of Brookfield*, 176 N. Y. 138.) The limitation in the granting part of the conveyance was enforced and reaffirmed by the *habendum*. The fair and reasonable construction is, and we hold, that the deed of March 24, 1795, conveyed to the city of New York only an easement over the lands therein mentioned.

The judgment appealed from should be reversed and judgment ordered for the defendant adjudging that by the said deed of March 24, 1795, made by James Stryker and others, an easement of or in that part of the premises described in the contract of sale herein, lying in the Bloomingdale road was conveyed to the mayor, aldermen and commonalty of the city of New York; that the plaintiff had not a good and marketable title to said lands lying in Bloomingdale road at the time of the tendering of the deed to the defendant; that the defendant recover of the plaintiff the sum of $500, with interest thereon from July 25, 1907, with costs in both courts.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, WILLARD BARTLETT and HISCOCK, JJ., concur.

Judgment reversed, etc.