LEMBECK & BETZ EAGLE BREWING COMPANY, Appellant, *v.*
JOHN H. ROSENSTEIN, Respondent.

Second Department, June 4, 1915.

Real property — Colonial grants of land on Staten Island — patents construed — reservation of highway along water front — exceptions and reservations in deeds distinguished — grant of fee subject to public right of way — extinguishment of easement by abandonment and non-user — Colonial statutes construed.

Although the patents granting lands upon Staten Island, executed by the Colonial Governor in the years 1680 and 1685, after describing the area granted, state that "there being eigh rodd in breadth by the waterside left for a highway," a strip of that width was not excepted from the grant, but at most a public easement therein was created for highway purposes, the fee vesting in the grantees.

There is a distinction between exceptions and reservations in deeds; where there is an exception the grantor retains the title, but the fee passes to the grantee where there is a reservation.

An easement such as a right of way newly created cannot be made the subject of an exception or reservation, because it is neither parcel of the thing granted nor is it issuing out of the thing granted, the former being essential to an exception and the latter to a reservation.

It cannot be held that a public right of way on the water front eight rods in width mentioned in the grants aforesaid is still an existing easement so as to justify a vendee in refusing to accept title, in the absence of all proof that said eight-rod strip was ever accepted by the public or used in any manner as a highway.

Assuming such public easement to have been created by the original patents, the same may be lost by non-user, and the extinguishment thereof by abandonment for a long time may be presumed.

In any event, the State by its own sovereign act abandoned such easement, if it ever existed, when by the Colonial statutes creating the "Great Road" in Richmond county, four rods in breadth, it provided that all lesser roads in the county should be three rods in breadth, and subsequently enacted that all provisions for the breadth of lesser roads in the county shall be repealed, made null, void and of none effect. Said last enactment reduced the width of any highway reserved in the patents aforesaid from eight to three rods, there being an abandonment by the sovereign of the remaining five rods, which reverted to the patentee.

The highway formerly called the "Shore Road" on Staten Island, and at present known as "Richmond Terrace," constitutes the only public easement in the lands granted by the patents aforesaid, these being the only roads by the waterside having physical existence.

The acceptance by the public of a new way in the place of an old way may be regarded as conclusive of the abandonment of the old.

APPEAL by the plaintiff, Lembeck & Betz Eagle Brewing Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Richmond on the 3d day of February, 1914, upon the decision of the court after a trial at the Kings County Special Term.

The judgment directed plaintiff specifically to perform certain agreements.

*D. Eugene Blankenhorn* [*George F. Stiebeling* with him on the brief], for the appellant.

*James E. Kelly,* for the respondent.

Judgment affirmed, with costs, on the opinion of Mr. Justice KAPPER at Special Term.

JENKS, P. J., THOMAS, CARR, RICH and PUTNAM, JJ., concurred.

The following is the opinion of the court below:

KAPPER, J.:

In three patents, two granted by Governor Andros, dated, respectively, December 1, 1680, and December 2, 1680, and the third by Governor Dongan, dated March 17, 1685, of lands in

Richmond county, within one of which the premises are situated, and the title to which the plaintiff as vendee under a contract of sale objects, the clause appears in each patent, after describing the areas granted, substantially as follows: "there being eight rodd in breadth by the waterside left for a highway." The plaintiff's objection to the title is that by these patents there was excepted from the grant a strip eight rods in width which now constitutes a public highway, the title to which is in the State of New York. The question is important in that it affects a great number of parcels of land upon Staten Island, all of which have been dealt with for an indefinitely long period as wholly unaffected by the clauses in the patents referred to. Much of the discussion in plaintiff's behalf is devoted to the claim that this eight-rod strip constitutes an exception to the grant or patent whereby title thereto remained in the crown and subsequently in the State by virtue of its succession to the rights of the crown. The reading of the descriptions in the patents convinces me that the eight-rod strip was not excepted but that, at best, a public easement was reserved therein for the purposes of a highway. Without particularizing the descriptions of the lands as set forth in the patents, it suffices to say that they all run to and along the waterside, whilst the clauses regarding the eight-rod strip express it as "left by the waterside," and, hence, the eight-rod strip was within the description of the area granted by the patents. The broad distinction between exceptions and reservations in deeds, for the purpose of determining ownership in land, retains the title in the grantor where the deed contains an exception, but passes the fee to the grantee where there is a reservation. But, according to the strict rules of law, an easement, such as a right of way newly created, cannot be made the subject of an exception or reservation because " 'it is neither parcel of the thing granted nor is it issuing out of the thing granted, the former being essential to an exception, and the latter to a reservation.' " (Jones Ease. § 89.) In this case a right of public passage only was intended, as I view it, and that, therefore, vested the fee in the patentees, subject to public easement. As was said in *Bradley* v. *Crane* (201 N. Y. 25): "There is nothing

inconsistent in the public use of land as a road and the retention by the landowners of the fee, subject to the easement." The next question is whether this is an existing easement or whether it must be deemed to have been lost by non-user. There is not a scintilla of evidence in the case of the acceptance by the public of this eight-rod strip for a highway nor of the establishment of such a highway nor of the user as a highway, of the eight-rod strip, in any manner, shape or form; and assuming a public easement to have been created by the patents themselves, it is a well-settled rule that such an easement in a highway may be lost by non-user, an extinguishment of it by abandonment for a long time being presumed. (Wash. Ease. & Serv. [4th ed.] 717.) The case at bar is not to be treated as one of an encroachment upon a highway which may not be permitted to destroy the public's right therein, but, rather, as one of a contemplated highway never accepted or used. Moreover, the State intended by its own sovereign act to abandon its easement as reserved in the patents. The Colonial statutes (Laws of 1703, chap. 131; Laws of 1704, chap. 144)* created the "Great Road" in Richmond county, defining its breadth as four rods, at the same time declaring the "Lesser Roads" in said county to be three rods in breadth, with the proviso that the three-rod breadth of the lesser roads was not to apply to roads through the lands of persons whose patents required the allowance of a "greater breadth for Roads and Highways." Notwithstanding the "greater breadth" of roads here specified as projected through patented lands, they were none the less "Lesser Roads" within the meaning of these Colonial statutes, as the context of the act shows that but one "Great Road" was intended in Richmond county, all others being defined as "Lesser Roads." The Colonial Statutes of 1719 (Chap. 372),* after reciting the preceding acts, including the proviso as to the greater width of roads which ran through lands of persons who by their patents were obliged to allow a greater breadth than the three rods, further recites that this proviso concerning the lesser roads has occasioned "Several unhappy Differences  *  *  * amongst the Inhabitants."

---

* See 1 Colonial Laws of New York (Comp. Stat. Rev. Comm.), 532, chap. 131; Id. 573, chap. 144; Id. 1024, chap. 372. — [REP.

The act then continues, that to prevent any further differences that shall or may arise in or about the lesser roads in said county, " That the said Exception Provisoe or Clause in the said Act mentioned for the breadth of the lesser Roads in the County shall be & is hereby repealed made null void & of none Effect. And the said Lesser Roads in the County aforesaid shall be of the breadth of three Rodd & no more, any thing in the said act, or any other act, contained to the Contrary in any wise notwithstanding."

It is clear, therefore, to my mind that the Colonial statute last referred to reduced the width of the contemplated highway in question from eight rods to three rods, and it must be held that as to the remaining five rods there was an abandonment by the sovereign of its right of user and that the same reverted to the patentee. (*Blackman* v. *Riley*, 138 N. Y. 327, 328; *Bradley* v. *Crane*, 201 id. 22.) The evidence, while somewhat meagre, would tend to show that the laying out of the road of any width by the waterside in Richmond county and adjacent to the premises in question would have been quite impracticable, owing to the propinquity of an embankment some forty feet or thereabouts in height. And so it is found that in 1705 there was duly laid out, by legal proceedings, duly recorded, a public highway, three rods wide, to be measured " from the edge of the bank." We find that these proceedings were supplemented in 1774 and 1802 by more specific descriptions and by a reduction of the width of the road to two and one-half rods, but still retaining its location upon this bank. That road, known to the inhabitants from the earliest memory of those now living as well as historically, has always been called the Shore road, and by present public records under the name of " Richmond Terrace," a handsome and modern street, as its physical presence clearly shows. In *Blackman* v. *Riley* (*supra*) the court (at p. 329) say: " This may be, perhaps, regarded as slight and unsatisfactory evidence as to the actual width of the road, and we may admit it would be if it were applied to matters of recent occurrence. We must continually bear in mind that we are inquiring as to matters which happened more than a century ago, and we must be content to rest upon such slight evidence as survives those times." Applying the view so expressed by

the Court of Appeals to the case at bar, the conclusion is formed that the "Shore Road," or "Richmond Terrace," constitutes the public easement in the patented lands hereinbefore referred to. This conclusion is properly derivable from the fact that no highway other than this was ever known to exist within the area of the patented lands, paralleling or contiguous to the waterside; that it was the only practicable or feasible land "by the waterside" for the location of the roadway; that the public has acquiesced in that situation for over two centuries; that the patentees and their successors have built upon and used, as private owners may, with the acquiescence of the State, the land between Richmond Terrace and the high-water line or waterside, and, it seems to me, that if there ever was a case of legal presumption of an abandonment of a highway by the public acceptance and adoption of another and more convenient, contiguous highway, the case at bar is such. In fact, had the eight-rod strip ever been used as a highway, its abandonment by presumption under the circumstances here existing should be found as a matter of fact. If a highway has been abandoned for a great length of time and another road has been opened, traveled by the public, and recognized by the public authorities, an abandonment may be presumed. "The acceptance of the new way in place of the old may be regarded as conclusive of the abandonment of the old." (Jones Ease. § 538, citing cases.) The complaint must be dismissed with judgment for the defendant upon his counterclaim decreeing specific performance, with costs. Findings in accordance with the foregoing may be submitted.